The next case today is United States v. Noel De Leon-De la Rosa, appeal number 19-2046 and United States v. Juan Batista Johnson Debel, appeal number 19-2067. Attorney Pimentel, please introduce yourself for the record and proceed with your argument. May it please the court. Good morning. I am Candice Pimentel Soto. I represent Appellant Juan Batista Johnson. Your Honor, can I reserve one minute for rebuttal? Yes, you may. Your Honor, Mr. Johnson did not have a fair trial for several reasons. One of them has to do with individual juror bias that was left unquestioned on the record. Shortly after the court expressed concern about having to judge that he thinks he cannot be impartial. And I would like to deduct from the record the significance of the statement that that juror made before the trial court. He said, Your Honor, my wife is an attorney. He also said that she works for a quasi-judicial government agency for the commonwealth in Puerto Rico. And as we all know, in such government agencies, hearings are held, parties provide testimony under oath, are represented by counsel. And at the end of the day, one of the parties claiming not to have violated any law could be sanctioned. And this individual juror also adds, Your Honor, my wife does discuss with me the undertakings in her employment. So, he concludes, and I quote, I don't think I can be impartial. And the judge asks, just to be sure, you don't think know what? That I can be impartial, the juror replies. Why that juror was allowed to serve in this case, we don't know. What we do know is that what the record does not show. The record does not show an individual statement from this juror assuring the court that he can put aside that bias that he just expressed and follow the instruction on the law and respect Mr. Johnson's presumption of innocence. Even under plain error review, appellate courts reverse convictions or grant habeas relief whether jurors state that he or she cannot be impartial and that statement is left unquestioned on the record. Because there's no certainty as to what effect that expressed bias had on the verdict and on the juror as a whole or on that individual juror as part of the petit juror that decided the case. In this case, that error constitutes a structural error and it was per se prejudicial. So, Mr. Johnson's argument is that this court should reverse his conviction because of this trial error. That was not the single significant error that happened in Mr. Johnson's trial. Another error was the presentation of lay witnesses, law enforcement officers providing testimony in the form of opinion on highly technological matters that are not familiar in everyday life. For instance, there was one government agent testifying before the trial and he was using a highly technological camera that was taking images that had to be interpreted by him and that he had to see if the images showed black or white polarities to conclude that what he was observing 2,000 feet down on the high sea were bales of cocaine. That same agent also told the jury that he understood that Mr. Johnson, while on the vessel on the high sea navigating 2,000 feet away from him, he claims that Mr. Johnson heard the airplane and that he was being an observer. Attorney Pimentel, I think the judge wants to speak to you, but you were disconnected for a second. Sure, the last 30 seconds you got disconnected, so you might want to repeat what you just said. I was saying that that same agent claimed that because of experiments that he had conducted with other fellow agents, he told the jury that he knew that Mr. Johnson heard him while navigating 2,000 feet away from the airplane that he was flying. These were highly technical and specialized testimonies that were provided to the jury to lead the jury to believe that Mr. Johnson was carrying a contraband in the vessel that he was found and arrested. There was another trial error, Your Honor, and Mr. Johnson was charged specifically, as the indictment reads, with that he could be convicted also if they believed that he had destroyed equipment. There is a statement of Mr. Johnson that was left on the disputer on the record that he admitted that he had thrown overboard a small engine. The evidence of controlled substances, as I have explained, was only circumstantial and based on this government agent's conclusions and opinions based on their experience. There's no certainty that the jury actually found Mr. Johnson guilty of the conduct that he was charged in the indictment and found by the grand jury, but it is more likely than not that the jury understood that if he had thrown a spur engine overboard, he was guilty of Con 5 and 6, which was not the conduct that the grand jury found and charged him with. All these trial errors that I have mentioned were highly prejudicial in this case, mainly because, going back to the lay witness opinion, discounting those improper conclusions on highly specialized and technical matters, the evidence, the record, would not support a conviction in this case, and that was highly prejudicial to Mr. Johnson. As to the jury instruction on charged conduct that was provided to the jury, he also chose prejudice in the sense that the evidence in this case was not overwhelming and was only circumstantial and actually based on this government agent's opinions and conclusions. And Mr. Johnson had no prior notice that he could be convicted of destroying equipment and not controlled substances as specifically charged in the indictment. Lastly, as to the sentence, Your Honor, the judge imposed a two-level enhancement after finding that Mr. Johnson's testimony during the suppression hearing was, and I quote, incorrect. There's nothing on the record from the trial judge making the finding that such testimony was false, nor that it was willful, and the record would not support such findings. Thank you, Ms. Pimentel-Soto. Thank you. At this time, Attorney Pimentel-Soto should please mute her audio and her video, and Attorney Zambrana, please unmute your audio and video, and please introduce yourself to the court. May it please the court, Your Honors. My name is Fernando Zambrana-Aviles, and I represent Noel de Leon de la Rosa. I would like to start by requesting the court's discretion for me to reserve one minute for rebuttal after the United States. I would like to turn immediately to some points that were brought forth by the United States through its brief, and the biggest problem with Noel de Leon de la Rosa's case is that there was a brutal violation by the admission of co-defendant Johnson's confession in this case, even though the United States argues otherwise because the United States believes that this record followed the case law in Richardson v. Marsh that states that a redaction together with a limited instruction to the jury is more than sufficient to avoid a brutal violation. The problem is that this is only one piece of the puzzle. According to circuit law from the U.S. v. Padilla-Galarza, this court said that prophylactic revisions must be carefully tailored in order to satisfy the Brutal standard. This court must say the efficacy of redactions on a case-by-case basis, paying careful attention both to a statement's text and the context in which it is offered. So context really matters in this case, Your Honor. We have to look at the authorities post-arrest. And his confession has two parts to it. The first part consists of when he arrived to the beach in the Dominican Republic to board the vessel that was heading to Puerto Rico, he stated that cocaine was already loaded on the vessel. So that makes a very strong implication that Mr. de Leon had to be the person who loaded the drugs there. And even though he is not mentioned by name, because the confession is sanitized. Sorry, I just muted myself. The fact of the matter is that that was the practical effect. The second part of the confession... Why is that? He got there, he didn't know what happened before he got there. How would he know who loaded it? Could it have been loaded before the other guy got there? Yes, Your Honor, and that is not on the record. The thing is that the jury can't deduct this conclusion by looking merely at the statement, because the statement doesn't mention anybody else. There is nobody else in the scene. For example, had there been other co-conspirators in the Dominican Republic, we can be pretty sure that Mr. Johnson Devil would have mentioned them as part of his statement. Like, somebody SYC, but not Noel de Leon, loaded the drugs on the vessel, or I saw somebody else over there, but that's not on the record in this case, and that is highly problematic. Now, if I may, Your Honor, I would like to turn to the second part of the confession, which has to do with Johnson Devil stating to the authorities that he grabbed a small outboard engine to which two barrels of cocaine were tied around, and he threw it overboard moments before Customs and Border Protection was able to interdict the vessel. Mr. Zambrano, I thought the key word was they, not he. I'm sorry? I thought the key word was they, not he. Yes, thank you for that observation, Your Honor. That's correct. The record reflects that he, you know, he's speaking about himself. He's not speaking about Mr. De Leon. As, you know, as we conceded, the statement is sanitized, but our argument here is the sanitization is insufficient given the circumstances. This is a case where there are only two persons alone in the middle of the ocean on a vessel. There's nobody else there, and the most problematic part of the statement as a whole, considering the part that has to do with the Dominican Republic and the part about jettisoning the engine, is that this is the only piece of direct evidence that was introduced by the United States at trial of wrongdoing, and it is so powerful that there is no way that the jury could have looked past that and, you know, use it only to convict Johnson DeVille and not Mr. De Leon. It is as if we expect an ocean great wall to hold against a tsunami, and this statement is the equivalent of a tsunami, not of a big wave with a little bit of a spillover effect, which is what happened in the garden. Can you hear me? Oh, I'm sorry, your honor. I could not hear you before. I can hear you now. Okay, my apologies. I just want to understand the record. Did the jury hear the statement they threw over the engine? No, no, your honor. Only he? Yeah, he stated that once he was in the boat, ESO, referring to the drugs were in the boat, and he used that word specifically ESO. ESO, correct. ESO is a code word for cocaine, according to the statement of the officer that relayed the confession that Mr. Johnson DeVille made, and he never mentioned they, you know, he never spoke in plural. Otherwise, we will have solely mentioned Johnson DeVille, referred to Johnson DeVille, but still the confession is so powerful that there is no avoiding the collateral damage or the direct damage for that reason. Let me ask. If between the airplane sightings and the others, it was clear that there were some bales in the boat, and then when they got there, the bales were gone, then the jury's left with the question of who did it. They have to find your guy aided and abetted or conspired it. Doesn't it actually help you that the other defendant said, I did it? Your honor, the problem is that they were charged with a conspiracy and with the actual action of aiding and abetting each other to jettison. Sure. You think there were three possibilities. One was your guy did it on his own. The other was Jones did it on his own. Or the other was they were aiding and abetting each other or conspired. Didn't his testimony sort of point towards one of those and eliminate the possibility that your guy did it on his own? Then if that's the case, we cannot understand the jury's verdict if what your honor suggests is true. And there's another thing. The United States conceded in its brief that the spotter in the airplane saw suspicious looking dark blots. He could not categorically conclude that those were bales of cocaine. He had a suspicion because of the circumstances surrounding the spotting. It was at night north of Puerto Rico, lights out, only two people on a small vessel, dark blots. So he thought there is something suspicious about this. And that's why he called customs. But then again, this is circumstantial evidence that there were ever drugs aboard the boat, which takes me back to the original statement that the only piece of evidence that was found was cocaine. Did the government need to prove that there was cocaine that was thrown overboard in order to, in other words, did the jury have to find it was cocaine? Yes, your honor. According to the theory of the case and the jury instructions, the court instructed the jury that cocaine is a controlled substance. That is on the record, your honor. And so one of your arguments then is the only direct evidence that there was cocaine on the boat is the statement of your co-defendant. Correct, your honor. Am I right though that the statute and the indictment, did the indictment require it to be cocaine? I know the instruction referenced cocaine, but the indictment say that or just a controlled substance? Your honor, if I may, I have the indictment right here to answer that question. I'm so sorry. I didn't have. Well, maybe you can check that out when you have a minute for rebuttal. Yes, your honor. I will most definitely do that. Thank you. At this time, attorney Zimbrana, thank you. You can mute your audio and your video. And attorney Conner, please unmute your audio and your video. And attorney Conner, please introduce yourself on the record and proceed. Good morning. Greg Conner on behalf of the United States. May it please the court. There was no error below that requires a remand for retrial or resentencing. So this court should affirm on all grounds. Now, there were a lot of issues raised by these defendants. And our presentation is going to focus on two of those issues, the jury selection and constructive amendment issues. And then, of course, I welcome any other questions and I'll do my best to allegation of juror bias. What happened below was an ambiguity followed by a clarification. Talking about the juror six, talking about his wife's employment, being an attorney for DACA, the court asked, could you nevertheless be impartial? And juror six follows with a double answer. I don't think no, which caused the ambiguity. The court asked a clarification question. You don't think using the juror's words in the question, you don't think no what. And this is where the governing law comes in. Under the Supreme Court's decisions in patent and skilling, this court should view that exchange with special deference because the court is able to assess demeanor, sincerity, inflection, tone, and the like. So when the prospective juror says, I could be impartial, the court confirms you can be impartial, okay. And then nobody in the courtroom gives any indication to doubt that. That should, I think, suffice to show the absence of a clear indication of bias. And if this court needs any more evidence, there are other examples, both of prospective jurors indicating that they did think they were too biased to sit on the jury. And there's also another example of a prospective juror saying that he can be biased, but it was clear that he was misspeaking. So again, there's the clarification and follow-up answers from the prospective juror. So on this record, there's no indication of a structural error. And just to put a fine point on it, to Johnson's suggestion that the court was willing to take anybody and made comments about nearing the end of the jury pool, right after the court made that statement, it also said we have a cushion of 11 jurors, and after that cushion, we'll make alternative arrangements. So in other words, everything on this record indicates that the court was not willing to just take anyone and would accept a biased juror. So again, I don't think this record has any evidence of a structural error in the pool. Now, regarding the constructive amendment issues, there is a crucial fact that is conspicuously absent from Johnson's brief, which is that section 551A, which is the definition of property subject to forfeiture, is present at least four times in the indictment. So Johnson cannot claim surprise or that there was any difference in the charge against him when the charge was always the forfeiture. So again, I'm not sure that the record supports Johnson's contrary argument. And I'm happy to address the Bruton issue or any other questions this court has. I will clear up a question about the record of Johnson's statement to Agent Borges. He did say they to Agent Borges. He used the word they, and the jury heard that testimony. But the substance of the statement, I think, is also important and defeats Johnson's claim because it's not incriminating to de Leon. So in that statement and both of Johnson's statements to law enforcement, it needed the testimony and remaining evidence of what the black blobs were. So for example, was there separate testimony from Was there separate testimony from Johnson about cocaine being tied to the engine? Yes, and it's very indirect. So the statement, first of all, Agent Calderon had to testify to what Esso meant because that was the only direct translation of what was attached to the engine. So it took the, I'm hoping I'm answering your Honor's question, it took both the interpretation of Esso as a code word for cocaine, Agent Calderon's statements that there were bails tied to the engine, and then the statements that at one point that Johnson threw over the engine. Suppose the statement was they jettisoned an engine to which cocaine was tied. Would that cause a Bruton problem? I think it would, your Honor. I think it would because it's directly. Yeah, so could you just explain how is this different? I realize that it comes in pieces and you have to put the statements together, but what you're putting together there are the confession. So when you're just combining pieces of a confession and then once it's combined, that confession creates a Bruton problem. It seems to me that's the only way to do it. Odd to me to say there's no Bruton problem because you had to put the pieces of the confession together. Well, it's certainly a weaker Bruton problem because there are these alternative statements and keep in mind the statement to Agent Calderon only inculpated Johnson, but it didn't even inculpate Johnson because it's not clear in either statement to enforcement that a crime had been committed. It took the interpretation of the slang word SO to mean cocaine and the remaining evidence, the surveillance videos for the government to show that what was underneath those or what was in those black blots was cocaine. So in other words, just on the statements alone, no, there is no inculpation to either defendant and especially not De Leon, who's the only one raising the issue. Well, go ahead, Judge Calderon. Well, you're losing me some on that. When he says they threw overboard a small spare engine, what possible reason could the jury have thought that De Leon threw an engine overboard other than to get rid of the drugs? I mean, you don't go around throwing engines off boats. It seems so close to just saying he threw the engine tied to the drugs. Respectfully, I disagree with that, and that's why the entire trial was law enforcement explaining based on their knowledge and experience what common practices are from these drug smugglers on Highway 19. Why would the jury have thought he threw the engine overboard? The jury would need the remaining evidence at trial to make sense of that, and this court has said a million times that is not a brutal violation. Let me try this. The co-defendant says two things. One, the SO's tied to the engine, and two, De Leon and I threw it overboard. That's the statement by the co-defendant. Isn't that the whole ball of wax? No, no. The only thing that's missing is what? That SO is a translation issue? Well, I mean, that's a pretty crucial point. What exactly was in these mysterious black blots, and what was thrown overboard, and why? That's the practice of... Just to be precise, that's not the point. The point is, what does SO mean? That's just a word. If SO means cocaine, then whether there's other evidence of cocaine is beside the point. When the officer is relaying the testimony, the question is, is he simply saying... Suppose he used the Spanish word for cocaine instead of cocaine. Would you say in that instance it's not a brutal problem? No. If he said... It's a little more difficult because it comes in two statements, but I think that would probably be a brutal problem because it's a directly inculpatory... So the key thing here is that this word SO could mean duck, could mean brick, could mean a thousand different things. That's part of it, and I also want to touch on the fact that this comes in two different statements that are actually competing. So in the statement stage in Calderon, it's only Johnson that's involved in that statement. He says he, he, he a bunch of times. I got it, but can I... Sorry, go ahead. Last thing, is there anything in the record to suggest an alternative interpretation of SO? No, I think it was certainly... It's a very general term. It means that in Spanish. So presumably the defense could have contested that interpretation of a slang word, but merely... I guess I'm not sure what the inculpating part of these statements are, especially regarding De Leon, who is only mentioned in the one statement that they threw overboard a small spare engine. Nothing in Johnson's statements to Agent Calderon were related to De Leon. So under this court's case law, under the Supreme Court case law, it takes reference to the other evidence at trial to assign any responsibility to De Leon. What evidence was there directly pertinent to De Leon apart from what Johnson said? Well, the screenshot that we included in our brief is part of the surveillance video, which is fuzzy at first, but in our view pretty clear toward the end of the video. That does seem to demonstrate that, that there was cocaine on the Yola. And then we also included the cell phone extraction from De Leon's phone that said things like, you know, tell me the price to sell there, giving pin information, don't move, don't make calls. It certainly seems to be a smuggling conversation. And then, yes, the broader... Even though the judge instructed the jury not to consider the statements against De Leon, the remaining law enforcement evidence about common practices, about this being a well-known drug route, all of that could be considered against De Leon. Did you need to prove that it was cocaine in order to sustain these convictions? Probably not, based on the indictment. It does become more specific by the time the jury is contraband that's property subject to forfeiture under Section 511A. And, for example, in the past, when a conspiracy or a plan has narrowed from indictment to the jury instructions, this court doesn't really address that as a constructive amendment issue. It addresses that as a variance issue, but whatever there was, narrowing is not prejudicial, didn't affect the notice to the defendants. So, whether it's a variance or a constructive amendment, neither occurred and neither prejudiced the defendants. Well, the only basis for convicting under Counts 5 and 6 was that it was cocaine, right? Because it had to be proved that the device, even if cocaine wasn't thrown overboard, that the device itself was related to the cocaine trafficking. But the jury found not guilty verdicts on the cocaine allegations. So, it was an instrument, but the jury seemed to think it wasn't tied to cocaine. Isn't that a problem? No, this sort of relates to a theme throughout the defendant's briefing that, you know, you couldn't convict on 5 and 6 and not convict on 1 through 4. But you're supporting 5 and 6 by saying it was cocaine. And what else would have been the basis for concluding it was the kind of equipment or instrument or whatever the statutory word is, except that it was tied to cocaine? What else would have brought it within that statute, even as simple equipment? Right, maybe I misunderstood your first question. How do you know that it wasn't spare parts or something like that? Right, so my point was, I was addressing the constructive amendment issue. For it's our position that it did show that the spare engine was attached to controlled substance, and the district court informed the jury that cocaine is a type of a controlled substance. So, I was just going to say, this is sort of, it seems as though Johnson was saying that the jury accidentally or mistakenly convicted just, you know, for this, like, oceanic littering theory that, you know, it was just the ocean or just the engine that was thrown overboard. And that's one that's not the statutory definition. But no matter what, whether it was equipment or conveyances, and I think those are more likely just surpluses in the instructions, but anything had to be related to a controlled substance in this case. And Johnson acknowledges that. Suppose you thought there was evidence sufficient to show it was a controlled substance of some kind, but not what kind. Can you win? Yes, under the charges against, this isn't in the briefing, but for example, when there's a difference from the indictment to the eventual conviction, this court has said in the past that the specific drug type does not matter. So, that's not... So, is the position you're putting to us that the evidence suffice to show it was at least a controlled substance, even if it wasn't enough to show it was cocaine? Or are you saying that the reason there's evidence to show it was a controlled substance is because there was enough evidence to show it was cocaine? Which of those two positions is your position? I will suggest a third option, which is that we could win if it was any type of Are you saying the reason there's evidence sufficient to show it's a controlled substance is because there was evidence sufficient to show cocaine? Or are you saying there is evidence to show it was a controlled substance, even if there was not evidence sufficient to show it was cocaine? I think the former, and the reason I'm hedging, is the indictment charged the destruction of So, I don't think it matters whether or not it was just... There's got to be enough evidence to satisfy even the controlled substance. So, is the evidence that you're pointing to evidence that would have to be sufficient to show it's cocaine? Or are you saying even if we didn't think we would know what type it is, the evidence nonetheless shows it was a controlled substance? Okay, my position is that the government should even if there is just evidence of a generic controlled substance. Okay, and what would that evidence be? Well, it is specific evidence about cocaine, such as SO being a slang term for cocaine, such as Agent Borges saying all of his interdictions are cocaine. So, I'm trying to, and I'm not sure if this is what you're getting at, I'm trying to distinguish between how the government could win under the terms of the indictment and what the evidence at trial actually showed. Does that part help, Judge Barron? Yeah, apart from the Bruton problem, why isn't there a Crawford error? The testimony was hearsay, right? That what Johnson told the agent, why isn't that a violation of the confrontation right? It's a short testimony being relied on to prove a case against De Leon that he doesn't get to cross-examine the declarant. Right, so the short answer is that the government complied with the made against De Leon, and if the district court gives an instruction that the statement should not be used against De Leon, which the district court did twice, then you don't run afoul of the confrontation clause. And other circuits bear this out a little more. I don't think this is really something the defendants develop, but to the extent this court's curious, the consensus seems to be that if you comply with Richardson, you comply with the confrontation clause and Crawford. So if the instructing judge mentions the magic words, that takes away any confrontation problem? That's sort of the second part. It's also by the nature of not being a statement against De Leon that inculpates De Leon, and Johnson doesn't raise this. The government used it as a statement against him, right? How else would they argue for his conviction of smuggling cocaine? The remaining evidence, it's our position that the government did not use this against De Leon, and as we note in our brief, when the judge gives that instruction, under this court's case law, jurors are presumed to And actually, I don't think they were even statements against Johnson, or at least not facially incriminating. When the two statements offered, there is no crime in those statements. What's the evidence that De Leon aided and abetted in throwing the stuff overboard? Well, the first part of that assessment is whether the substantive crime actually happened, and some of this is by inference because the jury was able to view the bales on the boat, and then the pictures of the boat that didn't have anything in that space afterwards. And because they were, you know, a group of two on a YOLA, on a common drug route, the jury could infer that he assisted and intended for the drugs to be jettisoned. Well, but just in terms of, it's not a, that aspect of it, the jettisoning is not a conspiracy charge alone, is it? No, I think. So, I guess just to repeat this question, what is the affirmative evidence that he himself played any role in throwing over the engines? It's clear the engine was overthrown. There's two people on a boat. Who threw it over? What's the evidence that, we know there's testimony that one of them's participated in it. What is the evidence that the other one did, other than just being on the boat? Well, being on a small boat on a common drug route, I think, is pretty powerful evidence that they have a joint objective in, one, trying to bring drugs to the shore of Puerto Rico, and then... What's the evidence of assisting in throwing the engine over? That's a separate aspect of the case. It, again, I think the evidence that the jury has is the before and after, the bails are there, then they're not there, and I think a rational jury can infer that they were in this together, and... That's a different aspect of it. What is the basis for getting through it? Okay, so, again, the substantive act of it probably being destroyed, and then the agreement itself will be by an inference that they are, you know, in it together, that they're agreeing, they're about to be apprehended, so they're going to destroy the evidence. I mean, the government was not able to provide testimony to that effect, but that doesn't mean that a rational jury can't think, you know, two individuals hearing the loud boat from Agent Borges' interdiction crew decided together that they would get rid of the evidence. So, you're saying it was a foreseeable step in a conspiracy, and that's the way, but as opposed to proving that he did it? I'm sorry, I don't totally follow your question. Well, suppose there was evidence that someone from the boat fired a shot at the airplane. That's the... Would that be sufficient to convict de Leon? Of firing the shot? Probably not. I think it would be less rational for a jury to conclude that two individuals held the trigger together. I think it's more rational for a jury to conclude that two individuals on a small boat that hear law enforcement would decide together to destroy evidence. Does that make sense? I mean, the shooting of a single bullet seems a lot more like an individual act. Well, let me come back to Judge Barron's questions. The convictions were for conspiracy to destroy property subject to forfeiture under certain drug statutes. Not conspiracy to distribute cocaine, because there are not guilties on those. So, the crime, if it was property subject to forfeiture under the statute, then destroying it was the offense. But even if de Leon was painted as a drug dealer, that doesn't advance the question of who picked up the engine and threw it overboard, which was the conspiracy to throw it over. What's the evidence that supports the actual convictions? Again, part of the counts of convictions are going to be based on the inferences that a rational jury can draw, that when two individuals on a known drug route hear a law enforcement boat, that they agree to destroy the evidence. I don't think we have to have evidence of the actual conversation. That would never happen. But a rational jury can say that both of the defendants decided there's a boat coming, we need to get rid of the evidence. Just to clarify, Mr. Connors, so I follow. There's a conspiracy to destroy the evidence subject to forfeiture charge, correct? That's correct. That's one of the charges. Is there a substantive charge of destroying the evidence subject to forfeiture also? Yes. Yes, there is. And as the second charge, you're saying it's rational to conclude that he must have participated in it beyond a reasonable doubt because it's the kind of people, not just that it's something that two people could do, but that it's probably the most obvious conclusion from evidence that two individuals on a known drug route from the Dominican Republic hear law enforcement and would want to get rid of the evidence. And in fact, we have the indication from the before and after photos that they did get rid of the evidence. By the way, there's testimony regarding the weight of the engines. It makes it more likely that I forget the exact pounds that they discussed. But these are relatively heavy. So, yes, all of the trial evidence allows the jury to determine both that there was the agreement and the joint action of jettisoning the drugs. And if there are no remaining questions, I'll just ask this court to affirm the conviction and sentences. Thank you. Thank you, Mr. Conner. Mr. Conner should mute his device at this time, audio and video. And Attorney Pimentel, please unmute your device. You will have one minute for rebuttal. Please reintroduce yourself on the record. Good afternoon. Again, this is Attorney Candice Pimentel on behalf of Appellant Mr. Johnson. May it please the court? Your Honor, the indictment does not generally charge destruction of evidence. The indictment is pretty specific in charging subsection A of section 511. And that is the indictment reads that defendants allegedly destroyed controlled substances and nothing else. So this is why it is so important that at the end of trial, the government, and if I'm not mistaken, the night before, suggested the court to also instruct the jury that the defendants could be found guilty if they were found that they had destroyed equipment. So this element was brought by petition of the government at the end of trial during instruction. And in page 48 of my opening brief, I list several cases, including a case from 2019 from this court finding that there was an amendment of indictment where defendant was under a subsection of a statute of conviction that was different from the subsection under which the jury found him guilty. And we have no certainty here that the jury found Mr. Johnson guilty under the subsection that he was charged with. Thank you. Attorney Pimentel, you may mute your audio and video at this time. Attorney Zambrana, please unmute your device. You have one minute of rebuttal. Please reintroduce yourself on the record. Yes, Your Honor. Fernando Zambrana-Aviles once more on behalf of Mr. De Leon de la Rosa. First, I want to turn to the question that's posed by the court regarding the indictment. According to the indictment, there is no mention of cocaine in counts 5 to 6. Count 5 being the conspiracy count to destroy the property, and count 6 the substantive one. However, the theory of the case of the government is that the property destroyed was cocaine. And that is also buttressed by the fact that there are four other counts that specifically charge defendants with possessing cocaine with intent to distribute it in the United States. I want to mention something else, Your Honor. This case is 100 percent built upon circumstantial evidence other than the statement that was submitted in regards to Mr. Johnson De Bell. And it is a flimsy case. The biggest problem with this case is that it requires the jury to stack inference upon inference to reach a guilty verdict. And the most important inference here is the fact that the dark plots seen in the vessel were cocaine. But there is no other evidence to prove that beyond what Johnson De Bell told the law enforcement officer, and which was broad as his confession at trial. Another issue, the government mentioned that the self-destruction is evidence of a drug trafficking venture. But the government introduced zero evidence to explain what they thought was coded language. The jury had absolutely nothing to grab what the cell phone messages meant. Thank you, Your Honor. Could you briefly address the government's point that there is evidence in the record that the size of the engine and the size of the bales of whatever it was, was enough to make it reasonable to conclude that it was a two-man operation to throw them over the boat? Your Honor, the thing is that there was no evidence. As far as I recall, there was no report weighted. That level of detail, I did not see it in the transcript, and I do not recall it from being present at trial, because I was trial counsel for Mr. De Leon. I'm sorry I cannot provide a complete explanation to the court as requested. Thank you. Thank you. That concludes argument in this case. Attorney Pimentel, Attorney Zambrana, and Attorney Conner, you should disconnect from the hearing at this time.